**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In Re: Rough Rice Commodity Litigation* | MASTER FILE No. 11 CV 00618 |
| This Document Relates To: All Actions | Honorable John W. Darrah |
| | Magistrate Judge Finnegan |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs' allegation that defendants manipulated the price of rice futures contracts is premised solely on allegations in a Commodity Futures Trading Commission ("CFTC") administrative proceeding which the defendants settled, without admitting or denying, that they owned or controlled rice contracts in excess of limits established by the Chicago Board of Trade ("CBOT"). From this starting point plaintiffs rely on implausible inferences to leap over the wide gap between the facts they can in good faith allege, *i.e.*, that defendants exceeded the limits, and the conclusion they wish to reach, i.e., that defendants manipulated the price of rice futures. Both law and logic prevent plaintiffs from making this leap, and without it, their case collapses.

In the CFTC settlement, three of the defendants settled charges that their aggregate position in rice futures contracts on the CBOT exceeded the CBOT's limits on various dates in 2007 and 2008, and the other two defendants settled charges that they failed to reasonably supervise to prevent the limit violations. There was no allegation of manipulation by any of the defendants, and no allegation that prices in the rice futures market were in any way affected by the alleged position limit violations. Nevertheless, based on this settlement, plaintiffs have brought a case which requires that they allege and prove intentional manipulation by defendants, resulting in artificial prices which resulted in them incurring a loss. For the reasons stated below, plaintiffs' overreaching attempt to infer a manipulation violation from a position limit violation is implausible and therefore fails to state a claim.

Apparently recognizing their inability to base their manipulation claim on mere position limit violations, plaintiffs reference alleged price statistics purportedly showing that rice prices during 2007-08 were unusual in comparison to those in 2005–07. But as a matter of law, unusual prices do not establish manipulation. In addition, these alleged unusual prices existed during one of the most unusual periods in the economic history of our country and the world, so

that manipulation cannot plausibly be inferred from unusual prices in 2007–08.  Thus, it is not surprising that plaintiffs do not and cannot allege a plausible connection between defendants' alleged position limit violations and these purported statistical anomalies.

There is another fundamental defect in plaintiffs' case.  Plaintiffs have failed to plead the essential element of loss causation, *i.e.*, that the alleged manipulation caused them to lose money and thereby to suffer damages.  Instead they allege merely that they traded in a manipulated market and lost money.  This is clearly insufficient, because, as a matter of law, a person who trades in a manipulated market will not be negatively impacted if the amount of the manipulation is the same at the times the person buys and sells, or if the manipulation improves the trader's position.

Plaintiffs have failed to state a claim against two of the defendants for an additional reason.  These two defendants are not alleged to have traded any rice futures, and they did not settle any charges of position limit violations.  Rather, these two defendants settled potential charges that they failed to properly supervise the accounts in which the violations occurred. Failure to supervise does not support a private cause of action, and plaintiffs are therefore asking the Court to infer that a failure to supervise constitutes aiding and abetting.  This inference, however, is impermissible as a matter of law, because plaintiffs have failed to allege the essential element of an overt act by either of these defendants in furtherance of manipulation.

It is evident that plaintiffs saw the public report of defendants' administrative settlement of charges of position limit and supervision violations, and have attempted to use it as the basis for bringing this manipulation and aiding and abetting case.  They have failed, however, to bridge the wide gulf between a position limit settlement and a manipulation claim, between the alleged manipulation and their trading losses, and between a supervision settlement and aiding

and abetting.  Plaintiffs have thus not pleaded a basis for proceeding with this action, and the Court should therefore not permit them to proceed further.

## Summary of Allegations[1]

### The Plaintiffs

Plaintiffs are two individuals who each traded rice futures or options contracts in 2007 and/or 2008.  (Compl. ¶¶ 1, 14.)  Each plaintiff alleges that he bought and/or sold rice futures or options contracts, and suffered a monetary loss.  Plaintiff Galan alleges that on two occasions, he sold one or more rice futures contracts and bought them back at a loss.  Plaintiff Laydon bought put options on rice futures contracts and held them to expiration when they expired worthless, resulting in a loss.  These two plaintiffs seek to bring the action on behalf of a class of persons who purchased or sold rice futures or option contracts during the period of October 1, 2007 through July 31, 2008.  (Compl. ¶ 59.)

### The Defendants

Defendant Daniels is the chief executive officer of defendant Global Asset Advisors, LLC ("GAA"), which is registered with the CFTC as an introducing commodity broker. (Compl. ¶ 15.)  Daniels is also a manager of defendant Daniels Trading Group, LLC ("DTG"), a trading company.  (Compl. ¶ 15.)  Defendant Swanson is the president of GAA and the chief operating officer of DTG.  (Compl. ¶ 17.)  Defendant Taylor traded for himself and for DTG. (Compl. ¶ 16.)

---

[1] The allegations include statements from the Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions, CFTC Docket No. 11-05 (Jan. 26, 2011) ("Order") (attached hereto as Exhibit A). Defendants may rely on the Order in their Motion to Dismiss because plaintiffs referenced it in the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**The Administrative Settlement**

The complaint is premised exclusively on facts alleged in an administrative settlement between the defendants and the CFTC, which settled potential charges that defendants Daniels, Taylor and DTG violated section 4a(e) of the Commodity Exchange Act ("CEA"), 7 USC § 6a(e), by holding rice futures contracts in excess of those permitted by the position limit rules of the CBOT, and violated section 9(a)(4) of the CEA, 7 USC § 13(a)(4), by concealing the ownership of the contracts. (Compl. ¶ 1 & n.1.) Position limits are the maximum number of contracts that may be held or controlled by one person for speculative purposes. (Compl. ¶ 44.) CBOT rules provide that the contracts held by two or more persons may be aggregated for position limit purposes when these persons are acting pursuant to an express or implied agreement or understanding. (Compl. ¶ 48.) According to the CFTC, the number of rice futures contracts held by Daniels, Taylor and DTG should have been aggregated and if aggregated, would have exceeded the CBOT's position limits. (Ex. A, Order, at 3.)

GAA and Swanson are not alleged to have traded any rice futures contracts during the relevant time period. (Ex. A, Order, at 3-4.) Instead, the CFTC alleged that GAA and Swanson violated CFTC Reg. § 166.3, 17 CFR § 166.3, by failing to properly supervise GAA's partners, officers, employees and agents, and as a result, allowed them to exceed position limits. (Ex. A, Order, at 4.)

In entering into the settlement, defendants did not admit or deny any of the CFTC's findings or conclusions. (Ex. A, Order, at 5.) Moreover, there is no allegation, finding or conclusion in the settlement order that any of the defendants violated the CEA's prohibition of manipulation, or that prices of rice futures were affected in any way by the alleged position limit violations.

**The Complaint**

Plaintiffs have brought a three count private civil action under section 22 of the CEA, 7 USC § 25, alleging in Count I that Daniels, Taylor and DTG violated the prohibition of manipulation in section 9(a) of the CEA, by manipulating rice futures and options prices. Count II alleges the same conduct, but alleges that Daniels, Taylor and DTG are each responsible for the acts of the other two based on principal-agent liability under section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B). Count III, which is the only count which names GAA and Swanson, alleges that all defendants are liable for aiding and abetting the manipulation under section 13(a) of the CEA, 7 USC § 13c(a). Plaintiffs allege no overt act in furtherance of any manipulation by GAA or Swanson. (Compl. ¶ 81.)

In alleging that defendants Daniels, Taylor and DTG violated position limits on various days in 2007–2008, plaintiffs identify no specific dates and no specific amounts for the alleged position limit violations, except for three days in July 2008. Neither plaintiff, however, traded in July 2008, as plaintiff Laydon traded only in 2007, and plaintiff Galan's last trade was on April 15, 2008.

Plaintiffs also allege that a number of statistical measures show that rice prices during the period of October 1, 2007 through July 31, 2008 were unusual on various unspecified dates in comparison to prices during the period from January 2005 through September 2007. For example, they allege that various spread relationships between rice futures contracts with different delivery months had larger increases and decreases during the latter period than during the earlier period, but they do not allege how the alleged position limit violations by defendants allegedly caused these increases and decreases.

## Argument

Under Federal Rule of Civil Procedure 8(a), a complaint must be dismissed "if the allegations do not state a plausible claim." *Atkins v. City of Chicago*, 631 F.3d 823 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In order for a claim to be plausible, it must be more than merely "conceivable." *Twombly*, 550 U.S. at 570. The Seventh Circuit has held that while the plausibility standard is not akin to a probability requirement, "'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Atkins,* 631 F.3d at 831 (quoting *Iqbal*, 129 S. Ct. at 1949). The level of factual content required to meet the plausibility standard can change with the circumstances— while a simple case may require very few facts, a "more complex case involving financial derivatives . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

When considering whether a complaint should survive a motion to dismiss, a court should not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1949-50. Further, in considering the plaintiffs' factual allegations, "courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

The complaint fails to satisfy the required pleading standards. The plaintiffs have alleged some facts that they obtained from the position limit settlement, but the only way they arrive at their desired conclusion of manipulation is through unsupported conclusory statements that do not connect the dots to establish a link between position limit violations and manipulation.

Plaintiffs' unsupported conclusions fail to meet the plausibility standard set forth in *Twombly* and followed by the Seventh Circuit.

## I. The Complaint Should Be Dismissed Because the Allegations Are Insufficient to Satisfy the Elements of a Manipulation Claim.

The CFTC settlement order relates to alleged violations of position limits under section 4a(e) of the CEA, whereas the complaint in this case is based on alleged violations of the prohibition of manipulation in section 9(a).  These are two very different provisions with different elements.  Section 4a(e) is violated, without more, where a trader or group of traders holds one or more contracts above a limit set by an exchange.  In contrast, a manipulation violation requires that four elements be satisfied: (1) the defendant had the ability to manipulate market prices; (2) an artificial price existed, (3) the defendant caused the artificial price to exist; and (4) the defendant specifically intended the artificial price to exist.  *In re Soybean Futures Litig.*, 892 F. Supp. 1025, 1045 (N.D. Ill. 1995) (Pallmeyer, Mag.), *adopted at* 1995 U.S. Dist. LEXIS 13924 (N.D. Ill. June 7, 1995).  In addition, a private civil action may be brought only where the plaintiff can show loss causation, *i.e.*, that it suffered actual damages as a result of the violation.  CEA § 22; *In re Energy Transfer Partners Natural Gas Litig.*, No. 4:07-cv-3349, 2009 U.S. Dist. LEXIS 75859, at *34-35 (S.D. Tex. Aug. 26, 2009), *aff'd* 610 F.3d 239 (5th Cir. 2010).

Recognizing that they do not have standing to bring a claim for position limit violations (*See Soybean Futures*, 892 F. Supp. at 1042), plaintiffs are trying to transform a position limit violation into a manipulation violation.  Because the elements of the two violations are different, plaintiffs seek to bridge the gap by asking the Court to draw unfounded inferences from factual allegations concerning position limit violations. But because the inferences plaintiffs ask the Court to adopt are supported by neither law nor logic,  their case should be dismissed.

### A. Plaintiffs Have Not Plausibly Alleged that Defendants Taylor, Daniels and DTG Had the Ability to Manipulate Rice Prices.

The first element of a manipulation violation is the ability to manipulate market prices. Plaintiffs recite this element as a legal conclusion in the complaint, which is insufficient under Rule 8. (Compl. ¶ 72(a) ("Defendants Daniels, Taylor and DTG had ample ability to cause and did cause artificial prices by injecting illegitimate and unlawful factors into the supply-and demand equation for rough rice futures and option contract prices.").)

Plaintiffs' only attempt to make factual allegations concerning defendants' alleged ability to cause an artificial price is that, in the last few days of trading of the July 2008 contract, defendants Daniels, Taylor and DTG allegedly held a significant proportion of the open contracts. (Compl. ¶ 54(b).) This allegation is insufficient for two reasons. First, both plaintiffs were out of the market long before July 2008, so whether defendants had the ability to cause an artificial price in July 2008 is irrelevant to their claims. Second, it is not even a plausible inference to state, without more, that the mere holding of a large position is sufficient to provide an ability to cause an artificial price. *Cf. Soybean Futures*, 892 F. Supp. at 1047 (holding that ability to manipulate can be alleged through a combination of market power and false reports); *In re Crude Oil Commodity Litig.*, No. 06-civ-6677, 2007 U.S. Dist. LEXIS 47902, *8-9 (S.D.N.Y. June 28, 2007) (allegation of ability to manipulate sufficient by alleging dominant position *plus* suppression of commodity delivery, conspiracy to conceal supply, and 'bidding up and/or trashing' spot market prices").

### B. Plaintiffs Have Not Plausibly Alleged That An Artificial Price Existed or Was Caused by Defendants.

The second and third elements of a manipulation violation are that an artificial price existed and that it was caused by defendants. Plaintiffs distort the law when they argue that a

position limit violation "necessarily" creates an artificial price. They cite cases which hold that an artificial price is one that results from something other than the legitimate forces of supply and demand, and they then contend that any contract which is traded in violation of position limits is not legitimate supply and demand, and therefore "necessarily" creates an artificial price. This argument is contrary to both law and logic.

To determine whether an artificial price existed, courts look to whether the price is affected by a factor that is not a "legitimate part of the economic pricing of the commodity." *In re Indiana Farm Bureau Coop. Ass'n* [1982-1984 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,796, at 27,288 n.2 (CFTC Dec. 17, 1982). While courts have defined an artificial price as one not determined by the legitimate forces of supply and demand, the courts have not ruled that a trade made in violation of an exchange rule, without any showing that the trade affected the price, satisfies this requirement. If the additional factor did not change the price of the commodity, there was no artificiality. Plaintiffs fail to plead facts demonstrating that the price was different as a result of additional trades made by defendants, and therefore fail to allege that the price was determined by any factors other than legitimate supply and demand.

This Court has already rejected the precise argument that plaintiffs attempt to make here: that when a market is affected by a factor that is not legitimate, the resulting price is necessarily artificial. In *Soybean Futures*, the plaintiffs in that case quoted from the following footnote in *Indiana Farm Bureau* to make this very same argument:

> "When the aggregate forces of supply and demand bearing on a particular market are all legitimate, it follows that the price will not be artificial. On the other hand, when a price is affected by a factor which is not legitimate, the resulting price is necessarily artificial."

*Soybean Futures*, 892 F. Supp. at 1057 (quoting *Indiana Farm Bureau*, at 27,288 n.2). On that basis, the plaintiffs in *Soybean Futures* argued that "Defendants' alleged misconduct necessarily

resulted in artificial prices; thus, evidence of Defendants' alleged manipulative acts is sufficient proof of the existence of artificial prices." *Id.* In the instant litigation, the plaintiffs once again make this argument, and cite to the very same language in *Indiana Farm Bureau*. (Compl. ¶ 42.) However, the Court in *Soybean Futures* expressly rejected this argument, and held that it was "unwilling to find as a matter of law that misconduct alone is sufficient proof of price artificiality." *Id.* The Court distinguished the above language from the CFTC decision in *Indiana Farm Bureau* on the basis that it was "mere *dictum.*" *Id.* The Court ruled that plaintiffs were required to present "substantive, objective evidence of price artificiality rather than rely on allegations of misconduct alone." *Id.* at 1058. Thus, plaintiffs' theory that trading misconduct alone *necessarily* leads to artificial prices was expressly rejected by this Court over fifteen years ago.

Further, plaintiffs' argument assumes, without any supporting allegation, that the purchase of a single contract above the speculative limit "necessarily" renders the market price "artificial." This inference is implausible, and is further undermined by the legislative history of the CBOT position limit rule for rice. On March 6, 2008, the CBOT requested the CFTC's approval to increase the limit from 1000 to 1800 contracts based on the "significant increases in volume and open interest that CBOT Rough Rice contracts have experienced in recent years." *See* Request for Commission Rule Approval, Ref. File #08-41R (March 6, 2008) (attached hereto as Exhibit B).[2] On March 26, 2008, the CFTC approved the CBOT's request to increase the

---

[2] The court can take judicial notice of this administrative filing when considering a motion to dismiss. *See 520 South Mich. Ave. Assocs., Ltd. v. Shannon,* 549 F.3d 1119, n.14 (7th Cir. 2008); *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2004); *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

limits, and the increase became effective on April 14, 2008.[3]  Thus, both the CBOT and CFTC

recognized that based on the level of trading beginning in 2007, the position limits should have

been higher.  They thus determined that position limits, during the time plaintiffs traded, were

lower than market conditions warranted.  This determination contradicts plaintiffs' assertion that

any trade above position limits must be manipulative.

Plaintiffs also allege statistics which they contend show unusual market prices during

2007-08.  But the allegation of unusual market prices, without any explanation, is insufficient as

a matter of law to establish artificiality.  *In re DiPlacido*, CFTC No. 01-23, 2008 CFTC LEXIS

101, at *87, Comm. Fut. L. Rep. (CCH) ¶ 30,970 (Nov. 5, 2008) ("a statistically unusual high (or

low) price will not on that basis alone be deemed artificial.")  It is also implausible for plaintiffs

to infer an artificial price from these statistics, or to infer that defendants caused them.  Plaintiffs'

statistics relate generally to the 2007-2008 time frame, but plaintiffs allege no connection

between these statistics and the specific dates when plaintiffs were trading, and no basis for

inferring that the statistics resulted from defendants' exceeding position limits.  Moreover, 2007-

08 was one of the most unusual periods in the economic history of the United States and the

world, so that there is no plausible basis to infer from these statistics that prices were either

artificial or manipulated, or that defendants' trading caused unusual prices during this period.

### C.    Plaintiffs Have Not Plausibly Alleged That Defendants Taylor, Daniels and DTG Had Specific Intent to Cause Artificial Prices.

"A manipulation claim requires a showing of specific intent, that is, a showing that the

defendant had the intent to cause artificial prices."  *Soybean Futures*, 892 F. Supp. at 1058-59

---

[3] *See* http://www.cftc.gov; *see also* Special Executive Report, S-4686, "Increase in Rough Rice Speculative Limits," (April 11, 2008) (attached hereto as Exhibit C).  The Court may take judicial notice of this public notification of an administrative decision.  *See 520 South Mich.*, 549 F.3d at n.14; *Menominee Indian Tribe*, 161 F.3d at 456; *see also* footnote 2, *supra*.

(quoting *In re Ind. Farm Bureau*, at 27,283). Mere knowledge that certain actions might have an impact on the futures market is not sufficient to state a private claim under the CEA. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 249 (5th Cir. 2010) (affirming dismissal and holding that "[u]nder a specific intent standard, mere knowledge is not enough. Defendants must have *specifically intended* to impact the futures market" (emphasis added)). The complaint does not include sufficient factual allegations to establish that any of the defendants had the purpose or conscious object of causing artificial prices in the CBOT rice futures market.

Instead, Plaintiffs ask the Court to infer that Defendants Taylor, Daniels and DTG had the requisite specific intent to manipulate prices in the rough rice futures market because they allegedly concealed from CBOT the fact that their positions should be aggregated. (Compl. ¶¶ 55-56.) But this inference is implausible because the allegation that defendants intended to conceal a position limit violation does not logically establish the intent to cause artificial prices.

### D.     Plaintiffs Fail to Allege Loss Causation.

Plaintiffs' claims are brought under section 22 of the CEA, which authorizes a private right of action for violations of the CEA. A requirement of this right of action is that plaintiffs have incurred "actual damages."

In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005), the U.S. Supreme Court held that under the securities laws, a complaint must provide the defendant with notice of the causal connection between the defendant's conduct and the plaintiffs' loss. Merely alleging that the plaintiff purchased a security at an "artificially inflated purchase price" is not itself a relevant economic loss. *Id.* Instead, the plaintiff must provide a defendant with some indication of the loss and the *causal connection* that the plaintiff has in mind. *Id.* While *Dura* involved

violations of the securities laws, courts also require the plaintiff to allege a link between causation and damages in manipulation cases brought under the CEA. *See In re Energy Transfer Partners*, 2009 U.S. Dist. LEXIS 75859, at \*37 (granting motion to dismiss because "Plaintiffs' bare allegations . . . do not give rise to a plausible inference that Defendants' actions affected futures prices such that Plaintiffs suffered a loss sufficient to state a CEA claim"); *Hershey v. PIMCO LLC*, 697 F. Supp. 2d 945, 954 (N.D. Ill. 2010) (holding that there is "no principled reason to distinguish between commodities manipulation cases and securities cases . . . as both claims require proof of causation of a loss").

Plaintiffs allege that they lost money trading rice futures and options, but they do not plausibly allege that these losses were caused by any manipulation violation by defendants. (Compl. ¶ 14.) Plaintiff Galan sold rice futures contracts, and then bought them back later for a higher price, incurring a loss. (*Id.*) Plaintiff Laydon bought rice put options, and they later expired worthless. But plaintiffs' only allegation regarding a causal connection with the alleged manipulation is that they traded in a manipulated market. But the adequacy of this sort of allegation was explicitly rejected in *Dura*—plaintiffs must allege more than the fact that they purchased and sold a security or future during the time that an artificial price may have existed. Thus, the Court held in *Dura*, 544 U.S. at 341, that if a purchaser buys a security whose price is artificial and then sells it before the artificiality changes, the purchaser will not have incurred any loss as a result of the artificiality.

Even assuming artificial market prices, the only way plaintiff Galan could have been damaged by an artificial price would be if the amount of artificiality was less at the time he sold than when he bought back his contracts. If artificiality was the same, he was not damaged, and if artificiality was greater when he sold than when he bought, he would have benefited from the

13

artificiality, because higher prices benefit a seller. There is no allegation that artificiality caused him to lose money in this manner.

Plaintiff Laydon similarly could not be damaged unless the amount of artificiality caused his options to expire worthless. If they would have expired worthless even in the absence of artificiality, he was not damaged. Because put options expire worthless when the market price is above the option's strike price, he would have to show that the amount of artificiality on the expiration date made a difference. He would also have to take into account any impact of artificiality on the price at which he bought his options.

Rather than allege that any of their losses were caused by the alleged artificiality, plaintiffs allege only that they lost money on their rice futures and options transactions, and they "suffered other legal injury including being deprived of a lawfully operating market." (Compl. ¶ 9.) There is no such injury recognized by the CEA. Instead, a private litigant may only recover *actual damages* under the CEA. CEA § 22. Because relief under the CEA is limited to actual damages, alleging a "harm [that] arises from having allegedly traded in an artificial market" is insufficient to plead a private cause of action under the CEA. *See In re Energy Transfer Partners*, 2009 U.S. Dist. LEXIS 75859, at *34-37.

## II. Swanson and GAA Should Be Dismissed for the Additional Reason that Plaintiffs have Failed to State a Claim of Aiding and Abetting Market Manipulation.

Count III of the complaint, which is the only count that names GAA and Swanson, alleges that these two defendants aided and abetted price manipulation by Daniels, Taylor and DTG. To state a claim for aiding and abetting liability, however, plaintiffs must allege that defendants "(1) had knowledge of the principal's . . . intent to commit a violation of the Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective." *Damato v. Hermanson*, 153 F.3d 464, 473 (7th Cir. 1998)).

Plaintiffs fail to allege "some act in furtherance of the principal's objective." *Id.*; *see also Weber v. E.D.&F. Man Int'l, Inc.*, No. 97 C 7518, 1999 U.S. Dist. LEXIS 495, at *9-10 (N.D. Ill. Jan. 13, 1999) (when asserting a claim for aiding and abetting a commodities violation, the plaintiff must allege "some affirmative conduct; that is, there must be evidence that [the] defendant committed an overt act designed to aid in the success of the venture"). Although they characterize GAA's and Swanson's conduct as "providing highly unusual assistance," the only facts alleged are that GAA and Swanson were aware of irregular activity and failed to report it and failed to supervise their employees. These are not affirmative acts in furtherance of the principal's objective. *See 766347 Ontario Ltd. v Zurich Capital Markets Inc.*, 249 F. Supp. 2d 974, 991 (N.D. Ill. 2003) (dismissing aiding and abetting claim because failure to ensure accuracy in disclosures to investors is not an affirmative step).

*Damato* requires that plaintiffs allege that defendant "committed some act in furtherance of the principal's objective." *Damato*, 153 F.3d at 473 & n.12 (complaint that alleged defendant "knew of irregular activity" and gave a "false appearance of legitimacy" to the scheme was insufficient to allege aiding and abetting market manipulation under the CEA). Thus, under clear Seventh Circuit precedent, the complaint fails to state a claim for aiding and abetting liability against GAA and Swanson.

## Conclusion

Plaintiffs' failure to allege a manipulation violation and loss causation requires dismissal of all three counts of the complaint, and their failure to allege an overt act by Swanson and GAA also requires dismissal of Count III as to those defendants. Accordingly, the Court should grant defendants' motion to dismiss, and dismiss the complaint in its entirety as to all defendants.

Dated:  August 5, 2011.

Respectfully submitted,


/s/William J. Nissen

William J. Nissen
Elizabeth L. Maxeiner
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
Ph:  (312) 853-7000
Fax:  (312) 853-7036
wnissen@sidley.com
emaxeiner@sidley.com


*Attorneys for Defendants Andrew W. Daniels,
Glenn A. Swanson, Global Asset Advisors LLC
d/b/a Daniels Trading, and Daniels Trading Group
LLC*


/s/Philip Stern

Phillip Stern
Neal Gerber & Eisenberg LLP
Two N. LaSalle Street
Suite 1700
Chicago, IL 60602
Ph:  (312) 269-8488
Fax:  (312) 269-1747
pstern@ngelaw.com


*Attorney for Defendant Edward L. Taylor*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on this day, August 5, 2011, I electronically filed the foregoing Memorandum with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record, including the following:

**Daniel J. Kurowski**
**Elizabeth A. Fegan**
Hagens Berman Sobol Shapiro LLP
1144 W. Lake Street
Suite 400
Oak Park, IL 60301
708 628 4949
Fax: 708-776-5601
Email: dank@hbsslaw.com
Email: beth@hbsslaw.com

**Geoffrey M. Horn**
Lowey Dannenberg Cohen & Hart, P.C.
White Plains Plaza
Suite 509
One North Broadway
White Plains, NY 10601-2310
(914) 997-0500
Email: ghorn@ldbs.com

**Vincent Briganti**
Lowey Dannenberg Bemporad, Selinger &
Cohen, P.C.
One North Lexington Avenue
11th Floor
White Plains, NY 10601
(914) 997-0500
Email: vbriganti@lowey.com

*Counsel for Plaintiff Jeffrey Laydon*

**Matthew E Van Tine**
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
312-332-3400
Fax: (312) 676-2676
Email: mvantine@millerlawllc.com

**Marvin Alan Miller**
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400
Fax: (312) 676-2676
Email: Mmiller@millerlawllc.com

*Counsel for Plaintiff George Galan*

/s/ Elizabeth L. Maxeiner
Elizabeth L. Maxeiner

## EXHIBIT LIST

1. Exhibit A - Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions, CFTC Docket No. 11-05 (Jan. 26, 2011)

2. Exhibit B - Request for Commission Rule Approval, Ref. File #08-41R (March 6, 2008)

3. Exhibit C - Special Executive Report, S-4686, "Increase in Rough Rice Speculative Limits" (April 11, 2008)