

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: ROUGH RICE COMMODITY LITIGATION

Case No. 11 C 618

Judge John W. Darrah

## MEMORANDUM OPINION AND ORDER

Plaintiffs Gregory Galan and Jeffrey Laydon bring this putative class action against Defendants Andrew Daniels; Edward Taylor; Glenn Swanson; Global Asset Advisors, LLC d/b/a Daniels Trading ("Global Asset"); and Daniels Trading Group, LLC ("DTG"). The Consolidated Class Action Complaint (the "Complaint") alleges violations of the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* ("CEA"), arising from an alleged scheme to manipulate the price of rice futures contracts from October 1, 2007 through July 31, 2008 (the putative "Class Period"). Before the Court is Defendants' Motion to Dismiss.[1]

---

[1] In their response brief, Plaintiffs have included extensive single-spaced footnotes that include arguments and a multitude of citations. On at least one page, the footnotes occupy more space than the actual text of their brief (*see* Resp. at 4), and on numerous other pages, the footnotes occupy at least half of the page. (*See* Resp. at 1-2.) Plaintiffs' use of footnotes is a blatant attempt to exceed the fifteen-page limit set by Local Rule 7.1 without prior approval of this Court.

## BACKGROUND[2]

*Parties*

Plaintiffs Galan and Laydon each traded rough rice futures or options contracts in October 11, 2007 to April 15, 2008. (Compl. ¶ 14.) Galan entered into two Chicago Board of Trade ("CBOT") rough rice futures contracts during the Class Period, resulting in a total loss of $11,360. (*Id.*) Laydon purchased ten January 2008 CBOT rough rice put options, which expired worthless on December 21, 2007, resulting in a loss of $1,000.00. (*Id.*)

Daniels is the Chief Executive Officer of Global Asset, which is registered with the Commodities Futures Trading Commission ("CFTC") as an introducing commodity broker. (*Id.* ¶ 15.) Daniels is also a manager of DTG, a trading company. (*Id.*) Swanson is the President of Global Asset and the Chief Operating Officer of DTG. (*Id.* ¶ 17.) Taylor traded for himself and for DTG. (*Id.* ¶ 16.)

*Commodity Futures Contracts*

CBOT is designated by the CFTC as a board of trade. (*Id.* ¶ 21.) The CBOT applies to the CFTC for permission to trade each commodity in which the CBOT offers a contract. (*Id.*) Briefly stated, a futures contract is an agreement to buy or sell a commodity and deliver that item at a certain date in the future. (*See id.* ¶ 23.) One of the futures contracts created by the CBOT and approved by the CFTC is the CBOT rough rice futures contract. (*Id.* ¶ 31.) Rough rice futures contracts are transacted electronically

---

[2] The following facts are drawn from Plaintiffs' Complaint, which are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

on the Chicago Mercantile Exchange ("CME") Globex electronic trading platform and also through open outcry on the trading floor of the CBOT. (*Id.* ¶ 32.)

*CFTC Proceedings*

Plaintiffs' Complaint incorporates facts alleged in the administrative settlement between Defendants and the CFTC in *In re Andrew W. Daniels, Edward L. Taylor, Glenn A. Swanson, Global Asset Advisors, LLC d/b/a Daniels Trading, and Daniels Trading Group, LLC*, CFTC Docket No. 11-05. (*See* Compl. ¶¶ 1, 3-8, 49-58.)

On January 26, 2011, Defendants consented to the entry of the CFTC Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions ("CFTC Order"), which settled potential charges that Daniels, Taylor, and DTG violated Section 4(e) of the CEA, by holding rice future contracts in excess of those permitted by the position limit rules of the CBOT, and violated section 9(a)(4) of the CEA, by concealing the ownership of the contracts. (Compl. ¶ 1 & n.1.)[3] Global Asset and Swanson are not alleged to have traded any rice futures contracts during the relevant time period. (CFTC Order, at 3-4.) Instead, the CFTC alleged that Global Asset and Swanson violated CFTC Reg. § 166.3, 17 CFR §

---

[3] Although Plaintiffs did not attach the CFTC Order to their Complaint, Defendants attached the CFTC Order to their Motion. (Mot., Ex. A.) The Court may consider the CFTC Order because Plaintiffs incorporate the CFTC Order into their Complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that courts are free to examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" in evaluating a motion to dismiss under Rule 12(b)(6)"); *Thompson v. Illinois Dep't of Professional Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

166.3, by failing to properly supervise Global Asset's partners, officers, employees and agents and, as a result, allowed them to exceed position limits. (Ex. A, Order, at 4.)

Position limits are the maximum number of contracts that may be held or controlled by one person for speculative purposes. (Compl. ¶ 44.) CBOT rules provide that the contracts held by two or more persons may be aggregated for position limit purposes when these persons are acting pursuant to an express or implied agreement or understanding. (*Id.* ¶ 48.) According to the CFTC, the number of rice futures contracts held by Daniels, Taylor and DTG should have been aggregated and, if aggregated, would have exceeded the CBOT's position limits. (CFTC Order, at 3.)

In agreeing to the CFTC Order, Defendants did not admit or deny any of the CFTC's findings or conclusions. (*Id.* at 5.) Daniels, Taylor and DTG agreed to pay a $2,000,000 civil monetary penalty to the CFTC. Defendants Global Asset and Swanson agreed to pay a $200,000 civil monetary penalty to the CFTC. (*Id.* at 6-7.)

*Plaintiffs' Claims*

The Complaint states a private putative class action under Section 22 of the CEA, 7 U.S.C. § 25, claiming in Count I that Daniels, Taylor and DTG violated the prohibition of manipulation in section 9(a) of the CEA, by manipulating rice futures and options prices. Count II claims the same conduct but alleges that Daniels, Taylor and DTG are each responsible for the acts of the other two based on principal-agent liability under section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B). Count III claims that all Defendants are liable for aiding and abetting the manipulation under section 13(a) of the CEA, 7 U.S.C § 13c(a), specifically as follows.

DTG, Daniels and Taylor repeatedly violated the CBOT's position limits. (Compl. ¶ 43.) CBOT rough rice futures contracts were subject to the position limits established by the CBOT and approved by the CFTC. (*Id.* ¶ 47.) Prior to April 14, 2008, the speculative limit for any month other than the spot month was 1,000 contracts. (*Id.*) Prior to April 14, 2008, the speculative limit for all contract months combined was 1,000 contracts. (*Id.*) Throughout the proposed class period, the speculative limit for the spot-month contract was 600 contracts, with a July contract step-down limit of 200 contracts during the final five trading days of the July contract. (*Id.*)

DTG, Daniels, and Taylor violated the CBOT position limits by "concealing the actual ownership and control of their rough rice futures from the CBOT." (*Id.* ¶ 49.) "On at least forty-two trading days, [DTG, Daniels, and Taylor] violated the CBOT's rough rice all-contract month speculative limit of 1,000 contracts." (*Id.* ¶ 51.) "On at least thirty-eight trading days, [DTG, Daniels, and Taylor] violated the CBOT's rough rice single contract month speculative limit of 1,000 contracts." (*Id.*) "On at least three of the last five trading days of the July 2008 rough rice futures contract, [DTG, Daniels, and Taylor] violated the CBOT's step-down speculative limit of 200 contracts in the July 2008 rough rice futures contract." (*Id.*)

The resulting prices of CBOT rough rice futures and option contracts were necessarily artificial by at least the amounts of impact on prices caused by the unlawful portion of Defendants' trades and positions. (*Id.* ¶ 53.) DTG's, Daniels', and Taylor's "violations of the speculative position limits of CBOT rough rice futures contracts also resulted in Defendants obtaining a dominant position in various contracts, including in

the July 2008 rough rice futures contract." (*Id.* ¶ 54.) Each artificial price caused by DTG, Daniels and Taylor "was disseminated market participants and caused artificial fluctuations of prices." (*Id.*)

That "[o]ver the forty-three month period beginning with the first business day in 2005 and continuing through the end of the Class Period (July 31, 2008), the twenty-one largest increases in the levels of prices and the twelve largest decreases in the levels of prices occurred during the Class Period when Defendants' eighty-three violations of the position limits were causing artificial and unwarranted fluctuations in the levels of prices." (*Id.*)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (*Twombly*). For a claim to have facial plausibility, a plaintiff must plead "factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*Iqbal*). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

## ANALYSIS

There are two preliminary issues to consider before determining whether Plaintiffs' Complaint meets the challenges of Defendants' Rule 12(b)(6) Motion. First, Defendants have brought *In re: Platinum and Palladium Commodities Litigation*, No. 10 C 3617, 2011 WL 4048780 (S.D.N.Y. Sept. 13, 2011) (*Platinum*), to the Court's attention, a case that was also filed by Plaintiff Galan. *Platinum* was decided after Defendants' Motion to Dismiss but before Plaintiffs' response were filed.

In *Platinum*, the court granted defendants' motion to dismiss a complaint that alleged a scheme to manipulate the prices of platinum and palladium futures contract in violation of the CEA. There too, the complaint substantially recited factual findings taken from a CFTC order, setting forth a settlement agreement between the defendants and CFTC. *Id*. ("To the extent the Complaint describes the manipulative trading scheme, those allegations simply recast the CFTC's findings and are derived wholesale from the CFTC Order.").

In *Platinum*, the defendants filed a motion to strike all references to the CFTC order pursuant to Federal Rule of Civil Procedure 12(f). As in this case, Galan's

7

complaint in *Platinum* relied almost exclusively on statements in a CFTC settlement order. The CFTC order in *Platinum*, however, contained findings of a "manipulative scheme." *Id.* at *6-7. Here, the CFTC Order contains only statements regarding position limit violations. The *Platinum* court described Galan's allegations as follows: "To the extent the Complaint describes the manipulative trading scheme, those allegations simply recast the CFTC's findings and are derived wholesale from the CFTC Order." *Id.* at *8-9. In holding that these findings were not a sufficient basis for a manipulation claim, the court stated as follows:

> Although the CFTC Order included certain factual findings, it nevertheless was the product of a settlement between the CFTC and the Respondents, not an adjudication of the underlying issues in the CFTC proceeding. Plaintiffs are therefore prohibited from relying on the CFTC Order to plead the 'underlying facts of liability.'

Relying on *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) (*Lipsky*), the district court granted defendants' motion to strike, noting the well-established precedent "that references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f)." *Id.* (quoting *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003)).

The court in *Lipsky* reviewed whether the district court erred when it entered an order under Rule 12(f), striking certain portions of the pleadings that contained references to an SEC complaint and consent decree that involved the defendant, Commonwealth United Corp. ("CUC"). *Lipsky*, 551 F.2d at 892-93. The *Lipsky* court affirmed the

8

decision by the district court, holding, "This is a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues. Consequently, it cannot be used as evidence in subsequent litigation between that corporation and another party." *Id.* at 893.

Applying that principle, the *Platinum* court held: "It is clear that the references to the CFTC's findings are properly stricken from the Complaint. To the extent the Complaint describes the manipulative trading scheme, those allegations simply recast the CFTC's findings and are derived wholesale from the CFTC Order." *Platinum*, 2011 WL 4048780, at *3.

In their reply brief, Defendants raise, *inter alia*, the issue of whether it is "sufficient for a plaintiff to plead a manipulation violation by merely parroting a CFTC settlement, entered into without admitting or denying any of the allegations." (Resp. at 4.) The Seventh Circuit has not decided this issue. Nor have cases from other courts of appeals been cited or found. *United States v. Bailin*, No. 89 CR 668, 1993 WL 28742, *2 (N.D. Ill. Feb. 1, 1993) ("[W]here there is no Seventh Circuit precedent, this Court should defer to the consistent precedents of other courts of appeal.") (citing *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987)).

Accordingly, the Court adopts the reasoning of *Lipsky* and, subsequently, *Platinum*. While Defendants have not moved to strike Plaintiffs' allegations that are derived from the CFTC Order, they do argue that *Lipsky* and its progeny hold that Plaintiffs' allegations are not a sufficient basis for a manipulation claim. (Reply at 2.) As in *Platinum*, here, Plaintiffs have "simply recast the CFTC's findings," and their

allegations "are derived wholesale from the CFTC Order." Under *Lipsky* and its progeny, the findings of the CFTC in its Order are not a sufficient basis for a manipulation claim. But as set forth below, Plaintiffs' claims fail for other reasons.

Second, Plaintiffs argue that "Defendants fail their movants' burden by failing to articulate any non-manipulative explanation for their conduct and failing to mention the important allegations against them." (Resp. at 2.) Plaintiffs misunderstand the applicable law. Under *Twombly* and *Iqbal*, Defendants must show that Plaintiffs' Complaint does not state a plausible claim of manipulation. *See Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011).

*Count I*

In Count I, Plaintiffs allege that Daniels, Taylor, and DTG[4] violated Section 9(a) of the CEA. To bring a claim under Section 9(a), a plaintiff must establish that: (1) the defendant had the ability to manipulate market prices; (2) an artificial price existed; (3) the defendant caused the artificial price to exist; and (4) the defendant specifically intended the artificial price to exist. *In re Soybean Futures Litig.*, 892 F. Supp. 1025, 1045 (N.D. Ill. 1995) (*Soybean Futures*).

By contrast, the CFTC Order relates to Defendants' alleged violations of position limits in violation of Section 4(e) of the CEA. Section 4(e) is violated where a trader or group of traders holds one or more contracts above a limit set by an exchange. 7 U.S.C. § 6a(e). The Commission is not required to establish intent to violate position limits in

---

[4] Plaintiffs refer to these Defendants as the "Manipulator Defendants" in their Complaint.

10

order to prove a violation. *Saberi v. CFTC*, 488 F.3d 1207, 1212 (9th Cir. 2007); *CFTC v. Hunt*, 591 F.2d 1211, 1218 (7th Cir. 1979). Plaintiffs do not have standing to bring a claim for position limit violations. *See Soybean Futures*, 892 F. Supp. at 1042. Here, Plaintiffs are trying to transform a position limit violation into a manipulation violation. (Mot. at 7.) These two causes of actions are comprised of distinctly different elements, as shown above.[5] Plaintiffs have offered no legal support for their contention, nor would such a premise be consistent with common sense. But this faulty premise underscores many of Plaintiffs' arguments in support of their claims. As discussed below, these arguments are unpersuasive.

First, Defendants argue that Plaintiffs have not pled that Defendants had the ability to manipulate market prices. With respect to the first element of their cause of action, Plaintiffs have recited this element as a legal conclusion, alleging that "Defendants Daniels, Taylor and DTG had ample ability to cause and did cause artificial prices by injecting illegitimate and unlawful factors into the supply-and-demand equation for rough rice futures and option contract prices." (*See* Compl. ¶ 72(a).) The only allegation that could be construed as remotely factual is in paragraph 54(b), when Plaintiffs allege that Defendants' "violations of the speculative *position limits* of CBOT rough rice futures contracts also resulted in Defendants obtaining a dominant position in

---

[5] Plaintiffs cite *Goldschmidt v. Hunt*, 556 F. Supp. 123 (N.D. Tex. 1983) (*Goldschmidt*) in a footnote, arguing that in this case, the plaintiff "successfully alleg[ed] [a] CEA manipulation and price-fixing under Section 1 of the Sherman Act based on findings of position limits in *CFTC v. Hunt*, 591 F.2d 1211, 1218 (7th Cir. 1979)." (Pl.'s Resp. at 5, n.12.) *Goldschmidt* does not even remotely support Plaintiffs' argument.

11

various contracts, including in the thinly traded July 2008 rough rice futures contract." (*See also* Compl. ¶ 50 (emphasis added) (alleging that "on at least three of the last five days of the July 2008 rough rice futures contract, the Manipulator Defendants violated the CBOT's step-down speculative limit.").) Plaintiffs' allegation fails to satisfy the first element of a Section 9(a) claim. Plaintiffs allege that they traded rough rice contracts from October 11, 2007 to April 15, 2008. (Compl. ¶ 14.) Therefore, whether Defendants had an ability to cause an artificial price in July 2008 is irrelevant to their claims.

Second, Defendants argue that Plaintiffs have not plausibly alleged that an artificial price existed. (Mot. at 8.) To determine whether an artificial price existed, courts look to whether the price is affected by a factor that is not a "legitimate part of the economic pricing of the commodity." *In re Indiana Farm Bureau*, CFTC No. 75-14, 1982 WL 30249, *35 n.2 (C.F.T.C. Dec. 17, 1982) (*Indiana Farm*).

Plaintiffs argue that Defendants' 83 violations of the *position limits* created an artificial price. (Resp. at 6.) This argument was rejected by the *Soybean Futures* court and is no more persuasive here. The plaintiffs in *Soybean Futures* made this same argument, relying on language in *Indiana Farm*, in which the CFTC stated, "when a price is affected by a factor which is not legitimate, the resulting price is necessarily artificial." *Soybean Futures*, 892 F. Supp. at 1057. In rejecting the argument, the court held, "the court is unwilling to find as a matter of law that misconduct alone is sufficient proof of price artificiality." *Id.* Plaintiffs cite no cases in which a court has ruled that a trade made in violation of an exchange rule, without any showing that the trade affected the price, established an artificial price.

12

Plaintiffs also allege price fluctuations in 2007 to 2008, which they contend are unusual market prices of rough rice contracts. (Compl. ¶ 36.) But the allegation of unusual market prices, without more, is insufficient to establish artificial prices, as a matter of law. *In re DiPlacido*, CFTC No. 01-23, 2008 WL 4831204, at *87 (C.F.T.C. Nov. 5, 2008) ("[A] statistically unusual high (or low) price will not on that basis alone be deemed artificial."). Accordingly, Plaintiffs have failed to plead that an artificial price existed.

Defendants next argue that Plaintiffs have not plausibly alleged that Defendants had specific intent to cause artificial prices. "[A] manipulation claim requires a showing of specific intent, that is, a showing that 'the accused acted (or failed to act) with the purpose or conscious object' of influencing prices." *Soybean Futures*, 892 F. Supp. at 1058-59 (quoting *Indiana Farm*, 1982 WL 30249, at *7). Mere knowledge that certain actions might have an impact on the futures market is not sufficient to state a private claim under the CEA. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 249 (5th Cir. 2010) (affirming dismissal and holding that "[u]nder a specific intent standard, mere knowledge is not enough. Defendants must have specifically intended to impact the futures market").

Plaintiffs argue that the Defendants' intent to manipulate is reflected in the concealment of their violations from the CBOT. (Compl. ¶ 55.) Specifically, Plaintiffs allege that "the CFTC further found that such Defendants willfully concealed from the CBOT the actual ownership and control of accounts that held rough rice positions." (Compl. ¶ 56.) Furthermore, "[b]ecause the purpose of *position limits* is to prevent price

manipulation, it is reasonable to infer and Plaintiffs do allege that, in concealing from the CBOT their true ownership and their frequent and large violations of the position limits, Defendants Taylor, Daniels and DTG specifically intended to impact and manipulate prices." (*Id.* (emphasis added).) As set forth above, the violation of position limits alone does not establish a price manipulation claim. Thus it follows that drawing an inference from this flawed premise is not possible.

For these reasons, therefore, Defendants' Motion to Dismiss is granted with respect to Count I without prejudice.

*Count II*

Plaintiffs have not plausibly stated a price manipulation claim under the CEA sufficient to survive Defendants' Motion to Dismiss. Therefore, Defendants' Motion to Dismiss is also granted without prejudice with respect to Count II, which brings a claim for principal-agent liability in violation of 7 U.S.C. § 1.

*Count III*

Count III, the only count that names Global Asset and Swanson, alleges that all defendants are liable for aiding and abetting the manipulation under section 13(a) of the CEA, 7 U.S.C § 13c(a), which creates liability for "[a]ny person . . . who willfully aids, abets, counsels, commands, induces, or procures the commission of a violation of any provisions of this chapter." Because the Court has determined that Plaintiffs cannot sustain a claim for price manipulation under the CEA, any claim for aiding and abetting others in committing them necessarily fails.

Even if Plaintiffs had stated a claim for price manipulation however, Count III would fail on the pleadings. To state a claim for aiding and abetting liability under § 13c(a) of the CEA, a plaintiff must allege that the defendant: "(1) had knowledge of the principal's intent to commit a violation of the CEA; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective." *766347 Ontario, Ltd. v. Zurich Capital Mkts., Inc.*, 274 F. Supp. 2d 926, 935 (N.D. Ill. 2003) (citing *Damato v. Hermanson*, 153 F.3d 464, 473 (7th Cir. 1998) (*Damato*).

Defendants contest only the third element of Plaintiffs' claim as to Global Asset and Swanson, arguing that Global Asset and Swanson should be dismissed from Count III because the Complaint does not allege that Global Asset or Swanson committed an "affirmative act in furtherance of the principal's objective." (Mot. at 15.)

In response, Plaintiffs argue that a claim for aiding and abetting liability may be supported by allegations of "omissions or passive inaction." (Resp. at 14.) Plaintiffs ignore the Seventh Circuit's controlling decision in *Damato*, in which the Court of Appeals held that a plaintiff must allege that the defendant "committed some act in furtherance of the principal's objective" to state a claim for aiding and abetting liability under the CEA. *Damato*, 153 F.3d at 473.

Plaintiffs argue that they have alleged "both commissions and omissions," pointing to certain allegations in their Complaint. (Resp. at 14, citing Compl. ¶¶ 57(c), 57(e), 57(d).) However, putting aside Plaintiffs' characterizations of the pleadings, none of these allegations constitute "an act in furtherance" of their Co-Defendants alleged price manipulation. For example, Plaintiffs allege that Global Asset and Swanson

"knowingly violated the most basic duties of a broker by allowing [Taylor] to place trades for an account in [Daniels' name], without a power of attorney authorization" and "allowed Daniels, Taylor, and DTG to repeatedly violate" the CBOT's rice futures position limits. *Id.*; *see also Amacker et al v. Renaissance Asset Mgmt, LLC*, 657 F.3d 252, 256 (5th Cir. 2011) (holding that an aiding and abetting claim under 7 U.S.C. 25(a) requires allegations, among other elements, that the alleged aider committed some act in furtherance of the principal's objective).

Plaintiffs cite three CFTC decisions that pre-date *Damato* and which are not considered in light of *Damato*. Plaintiffs also rely on four additional cases, none of which are persuasive. (Resp. at 15.) *United States v. Draves*, 103 F.3d 1328, 1333 (7th Cir. 1997), is inapposite because it involved a criminal credit-card antifraud statute and the defendant conceded that he committed an act in furtherance of the credit-card fraud. Moreover, the portion of the opinion relied upon by Plaintiffs involves a discussion of the knowledge element of an aiding and abetting claim. The remaining cases cited by Plaintiffs are not controlling authority in light of *Damato* and are distinguishable as the plaintiffs alleged overt acts in each of these cases. *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513 (S.D.N.Y. 2008); *FDIC v. FSI Futures, Inc.*, No. 88 C 906, 1991 WL 224302, at *1 (S.D.N.Y. Oct. 16, 1991). Furthermore, *Vaccariello v. Fin. Partners Brokerage, Ltd.*, No. 82 C 5910, 1983 WL 1367 (N.D. Ill. July 29, 1983), does not involve the application of the aiding and abetting standard at issue here. Accordingly, Defendants' Motion to Dismiss is granted without prejudice as to Count III with respect to Global Asset and Swanson.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [15] is granted without prejudice. Plaintiffs' Complaint is dismissed provided Plaintiffs may file an amended complaint consistent with the requirements of Federal Rule of Civil Procedure 11 within thirty days of the entry of this Memorandum Opinion and Order. Status hearing set for 3/22/12.

Date: 2-9-12

JOHN W. DARRAH
United States District Court Judge